**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARC AISEN,

Plaintiff,

v.                                                                Civil Action No.: 1:26-cv-12532

MICHAEL E. SCHOSTAK,
in his individual capacity,

Defendant.

<u>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**</u>

**JURY TRIAL DEMANDED**

<u>**INTRODUCTION**</u>

1.      In America, government officials may not use the power of their office to silence critics. Yet that is precisely what happened here. Michael Schostak, the elected Treasurer of Bloomfield Township, Michigan, enlisted the local police department to intimidate a citizen who had publicly criticized him, then used his official government email account to demand that the citizen stop all communication about him and retract his statements—under threat of criminal prosecution. No court ordered this. No judge approved it. Schostak, with the assistance of Police Chief James Gallagher and Sergeant James Shoemaker, simply weaponized the machinery of government to suppress speech he did not like.

2.      Marc Aisen sent a series of emails to township officials, media personalities, community activists, and others raising serious allegations about Michael Schostak's fitness for office and his alleged misconduct in connection with contracts for Jewish institutional security in the Metro Detroit area. Aisen's emails contained no threats of violence—not even anything that could be remotely construed as such. They were pointed, provocative political criticism of a public official, sent to other public officials and members of the public. Such speech is at the very core of the First Amendment's protection.

3.    In response, Schostak did not file a civil defamation lawsuit, seek a court order, or pursue any lawful remedy. Instead, he contacted Police Chief Gallagher (whose office is located in the same government complex as Schostak's office), who dispatched Sergeant Shoemaker to call Aisen—not to investigate any crime, but to pressure him to stop his criticism. When Aisen publicly denounced this abuse of power to other township officials and community members, Schostak escalated: he sent a cease-and-desist letter from his official government email, copying Gallagher and Shoemaker at their official police department email addresses, threatening Aisen with criminal and civil legal action if he did not stop all communications "to and about" Schostak and issue a public retraction.

4.    This was a coordinated use of government power—a public official's office, his official communications, and the police—to suppress protected speech and compel speech in the form of a retraction. It constitutes unlawful retaliation against protected First Amendment activity, an unconstitutional prior restraint on speech, and compelled speech in violation of the First and Fourteenth Amendments. Mr. Aisen brings this action to vindicate his constitutional rights and to deter the Defendant from future misconduct.

## JURISDICTION AND VENUE

5.    This action arises under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

6.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

7.    Venue is proper in this District because a substantial part of the events giving rise to Mr. Aisen's claims—including the transmission and receipt of the offending emails—occurred in this District, and because Mr. Aisen received the cease-and-desist communication in this District. 28 U.S.C. § 1391(b)(2).

## THE PARTIES

**Plaintiff**

8.      Plaintiff Marc Aisen is a resident of Massachusetts and a private citizen. He is Jewish and has taken a vocal interest in the security of Jewish institutions and the conduct of public officials charged with responsibility for, or connected to, that security.

**Defendant**

9.      Defendant Michael E. Schostak is the elected Treasurer of Bloomfield Township, Michigan. He is sued in his individual capacity. At all times relevant to this action, Schostak acted under color of state law. Schostak also held a role connected to Jewish institutional security through the Secure Communities Network ("SCN"), a private security organization that contracted with the UJA/Federation to provide security services to Jewish institutions in the Metro Detroit area.

## FACTUAL ALLEGATIONS

**Mr. Aisen raises serious allegations about a public official's fitness and conduct to other public officials and community members.**

10.      On October 8, 2023, Marc Aisen sent an email to a wide distribution list that included Bloomfield Township government officials and staff, members of the Bloomfield Township Board, local and national Jewish community organizations and leaders, media personalities, community activists, and other members of the public. The subject line read: "Michael Schostak Breeched Security With Hamas."

11.      Aisen's October 8 email contained serious allegations against Schostak concerning his fitness for public office and his role in Jewish institutional security.

12.      Aisen alleged, among other things, that: (a) Schostak had compromised Jewish institutional security through a relationship with or accommodation of the organization Hamas, which was at the time conducting violent attacks against Jewish people in Israel; (b) Schostak had obtained a lucrative contract to provide private security for Jewish institutions in Metro Detroit through the UJA/Federation, despite allegedly lacking the relevant law enforcement qualifications

for such work, potentially constituting "honest services fraud and consumer fraud"; (c) Schostak was affiliated with the Secure Communities Network (SCN), a security organization whose daily threat bulletin email system allegedly omitted advance intelligence regarding a planned attack on Jewish institutions—intelligence SCN purportedly possessed—and that this omission contributed to the January 2022 hostage-taking at a synagogue in Colleyville, Texas, in which worshippers were taken hostage during a religious service; and (d) Schostak had knowledge of and failed to report or act upon allegations of child sexual abuse within Federation-affiliated agencies in the Boston area, thereby potentially violating mandatory reporting obligations.

13. Aisen's October 8 email contained no threats of violence, no threatening language of any kind, and no content that could be construed, by any reasonable person, as threatening bodily harm or violence against Schostak or anyone else.

14. It was an accusatory letter making allegations of professional misconduct, fraud, and cover-ups by a public official—the quintessential form of citizen criticism of government.

15. The email posed a series of pointed rhetorical questions, demanding specific denials of the allegations, and concluded by calling upon Schostak and others implicated to resign and turn themselves in to law enforcement.

16. Aisen invited Schostak to file a defamation lawsuit if he believed the allegations were false, writing that he had "a legal right and the moral duty to tell the world what they did." Aisen expressly dared Schostak to prove him wrong in a court of law.

**Schostak responds not through the courts but through the police.**

17. Rather than pursue any lawful legal remedy—such as filing a civil defamation action, seeking an injunction, or otherwise petitioning a court—Schostak contacted Police Chief Gallagher to complain about Aisen's email.

18. As public officials, the offices of Schostak and Gallagher are in the very same government complex.

19. At Schostak's behest, Chief Gallagher directed Sergeant Shoemaker to contact Aisen by telephone.

20. On or about October 9, 2023, Sergeant Shoemaker called Aisen.

21. Shoemaker identified himself to Aisen as law enforcement and said that he was calling about Aisen's messages to Schostak.

22. Shoemaker did not inform Aisen that his messages were illegal or that Aisen had committed a crime.

23. In fact, Aisen's communications were entirely lawful and protected by the First Amendment.

24. No law enforcement officer has ever suggested that Aisen's communications constituted a crime.

25. The call was a pretext for using the presence of law enforcement to pressure Aisen to cease his criticism of a government official.

26. Aisen told Shoemaker that he is a "whistle-blower" and that his emails are protected free speech.

27. Shoemaker did not deny that Aisen's emails were protected free speech.

28. Shoemaker terminated the conversation because Aisen persisted in asserting that his conduct was protected by the first Amendment and Shoemaker could not deny it.

**Aisen publicly denounces the use of police power to silence him.**

29. On October 10, 2023, Aisen sent a follow-up email to several township officials, community members, Jewish activists, media personalities, and others. The subject of that email was: "Michael Schostak Abused His Position in Twp Government."

30. In that email, Aisen publicly denounced what he characterized as Schostak's misuse of police power to silence a critic. Aisen stated that Schostak had attempted to use his official position to have him contacted by police for the purpose of intimidating him, and accused Schostak of "committing the crime of witness intimidation." He reiterated his prior allegations regarding Schostak's alleged security contract fraud, his alleged failure to warn the Jewish community of the Hamas/CAIR threat before the Colleyville attack, and his alleged complicity in covering up child sexual abuse within Jewish Federation agencies.

31. Aisen's October 10 email was directed, in part, at the broader Bloomfield Township government—urging other officials to investigate Schostak's alleged misconduct in weaponizing the police against a critic.

32. Aisen wrote, "I'd say weaponizing police against a whistleblower qualifies as official misconduct."

33. Like his prior emails, this email contained absolutely no threats of violence, no threatening language, and no content that could be construed as threatening bodily harm to any person.

**Schostak uses his official government email to threaten Aisen with prosecution and demand a retraction.**

34. On October 12, 2023, shortly after Aisen's October 10 email, Schostak sent a communication to Aisen from his official Bloomfield Township Treasurer email account. The communication was captioned "Be Advised" and marked "High" importance.

35. The email was copied to "David Trivax"—identified as Schostak's attorney—as well as to James Gallagher and James Shoemaker at their official Bloomfield Township Police Department email addresses.

36. The cease-and-desist communication stated, in its entirety:

To: Marc Aisen

This letter serves as formal notice to cease and desist from any communication to me, my family, my colleagues, constituents or other associates. Your email messages are vile, contain hateful language, and are completely detached from any basis in fact. To be clear, I unequivocally deny your allegations as untrue and defamatory. You are hereby on notice to cease all communications to and about me. I am also demanding that you immediately provide a retraction of your defamatory comments to those individuals to whom your defamatory falsehoods were sent.

Be advised - I am prepared to take legal action, both criminal and civil, should you fail to heed this warning.

MICHAEL E. SCHOSTAK

Treasurer

Bloomfield Township, MI

37.     Schostak sent this cease-and-desist communication from his official government email account, signing it with his official title of "Treasurer, Bloomfield Township, MI."

38.     By copying Chief Gallagher and Sergeant Shoemaker at their official police email addresses, Schostak enlisted the police department as implicit enforcers of his demand to silence Aisen.

39.     The cease-and-desist letter demanded two things: (1) that Aisen immediately and permanently cease all communications "to and about" Schostak—covering not only future speech directed at Schostak but all speech about Schostak directed to anyone, including other public officials and members of the public; and (2) that Aisen affirmatively publish a retraction of his previous statements to all persons who had received them.

40.     Schostak never filed a civil defamation suit against Aisen.

41.     He never petitioned a court for an injunction or any other order.

42.     He never obtained any judicial authorization to compel Aisen to cease speech or to publish a retraction.

43.     No court has ever found that Aisen's statements were false or defamatory.

44.     The cease-and-desist letter does not allege that Aisen threatened Schostak.

45.     The cease-and-desist letter does not accuse Aisen of stalking or threatening or even harassing anyone.

46.     The cease-and-desist letter only alleges that the messages were "vile" and "hateful" and "untrue."

47.     The First Amendment protects speech aimed at a public official that is "vile," "hateful," and even to an extent "untrue."

48.     The cease-and-desist letter did not carve out an alternative means for Aisen to communicate his views about a public official.

49.     Even to the extent the cease-and-desist letter targeted speech that may not have been protected, the breadth of the demand prohibited speech that is protected by the First Amendment.

50.     The cease-and-desist communication, sent from a government official's government email account, copied to police officials at their government email accounts, threatening criminal prosecution, and demanding the cessation of all speech about a government official and the compelled publication of a retraction, constitutes a government action to suppress and compel the speech of a private citizen in retaliation for protected First Amendment activity.

**Injuries to Plaintiff.**

51.     As a result of Defendant's conduct, Aisen suffered and continues to suffer injury, including: a chilling effect on his First Amendment rights, causing him to curtail and self-censor his political speech about Schostak and related matters out of fear of further government retaliation; the emotional distress and anxiety of being contacted by police officers at the behest of a government official he was publicly criticizing; the burden and threat of criminal prosecution; and the ongoing suppression of his ability to speak freely about matters of significant public concern.

**CAUSES OF ACTION**

**Claim #1: First Amendment Retaliation**

(42 U.S.C. § 1983)

52.     Mr. Aisen realleges and incorporates the foregoing paragraphs as if repeated here.

53.     The emails that Mr. Aisen sent on October 8 and October 10, 2023, constitute speech on matters of substantial public concern—namely, the fitness and conduct of an elected public official, the integrity of government contracting, the security of Jewish institutions, and the alleged abuse of governmental power. Such speech lies at the very core of First Amendment protection. See Garcetti v. Ceballos, 547 U.S. 410, 419 (2006); Connick v. Myers, 461 U.S. 138, 145 (1983).

54.     At all times relevant to this action, it was clearly established that the First Amendment protects the right to engage in political speech criticizing government officials. *See, e.g., Watts v. United States*, 394 U.S. 705, 708 (1969).

55.     Mr. Aisen's communications contained no threats of violence. They did not constitute "true threats" under the First Amendment—that is, they did not communicate "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group." *Virginia v. Black*, 538 U.S. 343, 359 (2003). At no point in any of his emails did Aisen threaten Schostak or anyone else with physical harm, violence, or any unlawful conduct.

56.     Defendant Schostak, acting under color of his official authority as Bloomfield Township Treasurer, directed Chief Gallagher and Sergeant Shoemaker to contact Aisen by telephone in response to Aisen's protected speech—an act of retaliation designed to chill that speech.

57.     Chief Gallagher and Sergeant Shoemaker, acting under color of state law, carried out Schostak's directive, using the authority of the police department to pressure Aisen to cease his lawful criticism of a government official.

58.     Schostak then sent a cease-and-desist communication from his official government account, copied to police officials at their official accounts, demanding that Aisen permanently cease all speech about him and publish a retraction—a demand backed by the explicit threat of criminal prosecution and the authority of the police department.

59.     Mr. Aisen's protected expression was a direct and motivating factor in Defendant's retaliatory conduct, which included (but was not limited to) dispatching police officers to contact Aisen, threatening criminal prosecution, and demanding permanent suppression and retraction of his speech.

60.     These adverse actions would deter a person of ordinary firmness from continuing to engage in constitutionally protected expression, and would likely deter others similarly situated from engaging in similar protected expression. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006).

61.     At all times relevant to this action, it was clearly established that government officials may not retaliate against citizens for their exercise of First Amendment rights. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

62.     Defendant's retaliatory conduct entitles Mr. Aisen to compensatory damages. Defendant's conduct was malicious, oppressive, and in reckless disregard of Mr. Aisen's clearly established First Amendment rights, entitling him to punitive damages against Defendant Schostak.

### Claim #2: Unconstitutional Prior Restraint on Speech

(42 U.S.C. § 1983)

63.     Mr. Aisen realleges and incorporates paragraphs 1–30 as if repeated here.

64.     A prior restraint is any governmental action that suppresses speech before it occurs or prohibits the future exercise of expression. *Near v. Minnesota*, 283 U.S. 697 (1931). Prior restraints on speech are presumptively unconstitutional and carry the heaviest burden of justification known to First Amendment law. *See id.; New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

65.     Defendant Schostak's cease-and-desist letter, issued from his official government account and backed by the threat of criminal prosecution and the presence of police officers who had already been dispatched to contact Aisen, constituted a government-backed demand that Aisen permanently cease all future speech about Schostak.

66.     The demand to cease "all communications to and about" Schostak is a sweeping suppression of future speech—a prior restraint. It was not issued by any court. It was not authorized by any judge. It carried no procedural safeguards whatsoever. It was imposed unilaterally by a government official using the apparatus of his office and the police to silence a critic.

67.     No compelling, substantial, or even legitimate government interest justifies this restraint. A public official's personal desire to be free from criticism—even criticism he deems false or defamatory—does not justify a prior restraint. The law provides civil defamation remedies precisely because prior restraints are forbidden even where underlying speech might be actionable.

68.     Defendant's prior restraint was particularly egregious because it was backed by the threat of criminal prosecution and by the demonstrated willingness of law enforcement to contact Aisen on Schostak's behalf.

69.     Schostak's unconstitutional prior restraint on Mr. Aisen's speech entitles Mr. Aisen to declaratory relief, injunctive relief, and compensatory damages. Schostak's conduct was malicious and in reckless disregard of clearly established law, entitling Mr. Aisen to punitive damages.

### Claim #3: Compelled Speech in Violation of the First Amendment

(42 U.S.C. § 1983)

70.     Mr. Aisen realleges and incorporates paragraphs 1–30 as if repeated here.

71.     The First Amendment protects not only the right to speak but the right to refrain from speaking. The government may not compel a citizen to espouse views he does not hold or to recant statements he sincerely believes to be true. See Wooley v. Maynard, 430 U.S. 705, 714 (1977); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

72.     Defendant Schostak's cease-and-desist letter demanded that Aisen "immediately provide a retraction of your defamatory comments to those individuals to whom your defamatory falsehoods were sent." This is a demand that Aisen affirmatively publish speech—a government-mandated retraction—that Aisen does not believe to be true. Aisen sincerely believes his allegations against Schostak are accurate.

73.     This demand was issued under threat of criminal and civil legal action, backed by the authority of the Treasurer's office and the implicit enforcement power of the police department that had already been used against Aisen.

74.     No court has ordered Aisen to publish a retraction. No judge has found his statements to be false. Schostak had no authority—legal, judicial, or constitutional—to compel Aisen to publish any statement.

75.     Schostak's demand for a compelled retraction violates the First Amendment's prohibition on compelled speech. Mr. Aisen is entitled to declaratory relief, injunctive relief, compensatory damages, and punitive damages.

### Claim #4: First Amendment Retaliation — Abuse of Law Enforcement

(42 U.S.C. § 1983)

76.     Mr. Aisen realleges and incorporates paragraphs 1–30 as if repeated here.

77.     A government official violates the First Amendment when he uses law enforcement resources to retaliate against a citizen for protected speech. The use of police to contact, pressure, or intimidate a speaker in response to his exercise of First Amendment rights is unconstitutional government retaliation. See Hartman v. Moore, 547 U.S. 250 (2006); Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).

78.     Defendant Schostak, acting under color of his official authority, directed the Bloomfield Township Police Department to contact Mr. Aisen following Aisen's protected speech. Schostak's motive was to suppress Aisen's criticism and intimidate him into silence.

79.     Chief Gallagher, as head of the police department, directed and authorized Sergeant Shoemaker to make contact with Aisen at Schostak's behest. Chief Gallagher thereby became an instrument of Schostak's retaliatory campaign.

80.     Sergeant Shoemaker carried out the retaliatory contact, calling Aisen—a private citizen who had committed no crime—at the direction of a government official seeking to silence his speech.

81.     No legitimate law enforcement purpose justified contacting Aisen. His emails contained no threats of violence, no criminal conduct, and no basis for any police investigation. The sole purpose of the contact was to carry out Schostak's retaliatory agenda.

82.     Defendant's use of police power to retaliate against Mr. Aisen for his protected speech entitles him to compensatory and punitive damages.

**Claim #5: Conspiracy to Violate Civil Rights**

(42 U.S.C. § 1983)

83.     Mr. Aisen realleges and incorporates paragraphs 1–30 as if repeated here.

84.     Defendant Schostak acted in concert and pursuant to a common plan and agreement to deprive Mr. Aisen of his First Amendment rights. His coordinated conduct reflects a conspiratorial agreement to use government power to suppress Aisen's protected speech.

85.     The Defendant took overt steps in furtherance of this conspiracy, and each caused injury to Mr. Aisen's constitutionally protected rights.

86.     Defendant's conspiracy to violate Mr. Aisen's civil rights entitles him to compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marc Aisen respectfully requests that this Court enter judgment against Defendant and issue the following relief:

A.     A declaration that Defendant's conduct violated Mr. Aisen's rights under the First and Fourteenth Amendments to the United States Constitution;

B.     An award of compensatory damages against the Defendant in an amount to be determined at trial;

C.     An award of punitive damages against Defendant Schostak for his malicious, oppressive, and reckless disregard of Mr. Aisen's clearly established constitutional rights;

D.     An award of reasonable attorneys' fees, statutory fees, and costs under 42 U.S.C. § 1988 and other applicable law; and

E.     All other further legal and equitable relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38, Plaintiff Marc Aisen demands a trial by jury on all issues so triable.

DATED: June 4, 2026


Respectfully submitted,

      /s/ Ryan P. McLane

Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(P) (413) 789-7771
(F) (413) 789-7731
ryan@mclanelaw.com


Mark L. Javitch,
*PHV application forthcoming*
CA Bar ID: 323729
Jonathan Gross,
*PHV application forthcoming*
MD Bar ID: 1912170138
Jewish Community Advocacy Council
3 E. 3rd Ave., Suite 200
San Mateo, CA 94401

Counsel for Plaintiff Marc Aisen